IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN HAUG, | ) | CASE NO. 1:12 CV 485 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| PNC FINANCIAL SERVICES | ) | |
| GROUP, INC., *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -3-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
      A.     Standard of review – Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -5-
      B.     Application of standard – PNC's motion should be granted. . . . . . . . . .  -6-
           1.     ECOA claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -6-
                a.     The statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -6-
                b.     Limitations period, equitable tolling, continuing violation
                     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -7-
                c.     The ECOA failure of notice claims (counts one and two)
                     should be dismissed as untimely filed. . . . . . . . . . . . . . .  -10-
                d.     The discrimination charges of counts three, four and five
                     should also be dismissed as failing to state a claim upon
                     which relief may be granted under ECOA. . . . . . . . . . . .  -12-
                    i.     Timelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -14-
                    ii.     Basis of discrimination – failure to follow bank policy
                         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -15-
                    iii.     Basis of discrimination – exercise of statutory rights
                         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -16-
           2.     The FIRREA count (count six) . . . . . . . . . . . . . . . . . . . . . . . . .  -18-
                a.     The statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -18-
                  b.     Haug's claim fails to state a claim upon which relief may be
                     granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -19-

3.      State law claims (counts seven, eight, nine, ten and eleven)  . . .  -21-
        a.      Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -21-
        b.      All remaining state law claims should be dismissed.  . . .  -22-

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -23-

# Introduction

Before me by referral[1] in this case involving federal and state law claims arising from a purported improper denial of consumer credit is a motion by defendants The PNC Financial Services Group, Inc. and PNC Bank, National Association (PNC)[2] to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.[3] *Pro se* plaintiff Kevin Haug opposes the motion,[4] and PNC has filed a reply to that opposition.[5] For the reasons that follow, I will recommend that PNC's motion be granted in part, such that the claims based on federal law be dismissed as claims upon which relief cannot be granted and/or time-barred, and the claims based in Ohio law be dismissed without prejudice, as will be detailed below.

---

[1] ECF # 7.

[2] PNC states that PNC Bank, National Association is the only proper defendant here because The PNC Financial Services Group, Inc. does not and could not have performed any of the actions described in the complaint. ECF # 5 at 1 n.1.

[3] ECF # 5.

[4] ECF # 10.

[5] ECF # 11.

## Facts

In brief, the 47-page complaint alleges that in 2005 Haug, while working for the former National City Bank (NCB), an entity that later became PNC, applied for a debt consolidation loan, but that NCB failed to timely respond to his application and failed to answer his inquiries as to the cause of the delay, later telling him that he did not apply in proper fashion, and then misleading him – in retaliation for his status as a whistle-blower – when he attempted to pursue a remedy through corporate channels and with the Comptroller of the Currency.[6]

The complaint contends that these actions violated:

(1)     the federal Equal Credit Opportunity Act (ECOA),

(2)     the federal Financial Institutions Reform Recovery and Enforcement Act (FIRREA), and

(3)     the Ohio Deceptive Trade Practices Act (ODTPA).[7]

In addition, Haug contends that PNC has liability for the Ohio common law torts of fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, and negligence.[8]

---

[6] ECF # 1 at ¶¶ 4-23.

[7] *Id*. at ¶ 2.

[8] *Id*.

PNC, in its motion to dismiss, contends that:

(1)     the claims for failure to provide notices and disclosures required by the ECOA are time-barred;[9]

(2)     any discrimination claim arising under the ECOA is precluded because Haug has not alleged any adverse credit action as the result of being a member of a protected class or by reason of engaging in a protected activity;[10]

(3)     Haug has failed to allege any adverse employment action against him as would be necessary to state a claim for retaliation;[11]

(4)     Haug has not stated a claim for relief under Ohio's Deceptive Trade Practices Act because nothing alleged against PNC is addressed by the ODTPA;[12]

(5)     the misrepresentation and concealment claims must fail because Haug did not rely to his detriment on any alleged representation or omission by PNC, and because he has not pled fraud and concealment with the requisite particularity;[13] and

(6)     the negligent misrepresentation claim, as well as the negligence claim, should be dismissed because Haug has not alleged that he had any special relationship with PNC giving rise to any duty on behalf of PNC that was later breached.[14]

---

[9] ECF # 5 at 5-7.

[10] *Id*. at 7-9.

[11] *Id.* at 9-10.

[12] *Id.* at 10-11.

[13] *Id.* at 12-14.

[14] *Id*. at 15-17.

As noted, Haug filed a response opposing the motion to dismiss,[15] to which PNC replied.[16]

## Analysis

### A.    Standard of review – Rule 12(b)(6)

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." In adjudicating a motion to dismiss advanced under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."[17] Moreover, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."[18]

In that regard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' ... A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] Thus, "[t]o survive a Rule 12(b)(6)

---

[15] ECF # 10.

[16] ECF # 11.

[17] *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citations omitted).

[18] *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

motion to dismiss, plaintiff's pleading must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"[20]

In addressing a motion under Rule 12(b)(6), the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."[21]

## B.    Application of standard – PNC's motion should be granted.

## 1.    *ECOA claims*

### a.    *The statute*

In *Mays v. Buckeye Rural Electric Cooperative*,[22] the Sixth Circuit discussed the elements of a prima facie case of discrimination under the ECOA. After noting that the statute's purpose was to "'eradicate credit discrimination against married women whom creditors traditionally refused to consider for individual credit,'"[23] the Sixth Circuit found that claims raised under the ECOA were, therefore, similar to Title VII employment

---

[20] *Bowman v. United States*, 304 F. App'x 371, 374 (6th Cir. 2008) (citing *Ass'n of Cleveland Fire Fighters*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555)).

[21] *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

[22] *Mays v. Buckeye Rural Elec. Co-op.*, 277 F.3d 873 (6th Cir. 2002).

[23] *Id.* at 866 (quoting *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982).

discrimination claims and so should proceed according to the analytical process developed in Title VII cases.[24]

Specifically, *Mays* teaches that a "[p]laintiff can establish a prima facie case of credit discrimination [under the ECOA] by showing: (1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from the Defendant; (3) Plaintiff was qualified for the credit; and (4) despite Plaintiff's qualification, Defendants denied her credit application."[25]

b.      *Limitations period, equitable tolling, continuing violation*

By terms of Public Law 111-203, § 1085(7) enacted on July 21, 2010, Congress increased the limitations period for bringing an action under the ECOA from two years to five years.[26] Although PNC cites to the present five-year limitations period as governing in this matter,[27] that period did not take effect until July, 2010, and the two-year limitations period applied prior to claims accruing prior to that date.[28]

----

[24] *Id.* (citations omitted).

[25] *Id.* at 877 (citations omitted).

[26] *See*, 15 U.S.C. § 1691e(f); *see also*, *Mays*, 277 F.3d at 279 (citing the prior two-year limitations period).

[27] *See*, ECF # 5 at 6.

[28] *Cottrell v. Vilsack*, ___ F. Supp. 2d ___, 2013 WL 49569, at *7 n.7 (D.D.C. Jan. 4, 2013).

In general, absent an express statement by Congress that an expansion of a limitations period should apply retroactively,[29] courts following the Supreme Court's holding in *Landgraf v. USI Film Products*[30] have uniformly concluded that newly enacted legislation that lengthens a statute of limitations does not apply retroactively to revive a claim that had expired under the prior limitations period.[31] Thus, any ECOA claim accruing before July 21, 2010, is subject to a two-year limitations period, not the subsequently enacted five-year period.

*Mays* teaches, in conformity with other courts, that the ECOA limitations period begins to run at the time the violation occurs, not "at the time when the consequences of the action become painful."[32] Thus, where the alleged violation is a failure to provide notice within the required time, the claim accrues on the date the notice was due but not provided; the limitations period begins on that date.[33] Similarly, where the alleged violation is

---

[29] *See also*, *id.* at n.8. Prior to the 2010 extension of the limitations period, Congress in 1998 passed legislation reviving ECOA claims against the U.S. Department of Agriculture that were filed between 1981 and 1996 but had been barred by the two-year limitations period. This legislation created a window for farmers to refile the claims in federal court or seek review by the Department of Agriculture.

[30] *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).

[31] *In re ADC Telecomms., Inc. Secs. Litig.*, 409 F.3d 974, 977 (8th Cir. 2005); *Enter. Mortgage Acceptance Co., LLC, Secs. Litig. v. Enter. Mortgage Acceptance Co.*, 391 F.3d 401, 409-10 (2d Cir. 2004); *Chenault v. U.S. Postal Serv.*, 37 F.3d 535, 539 (9th Cir. 1994).

[32] *Mays*, 277 F.3d at 879 (citation omitted); accord, *Moore v. Wells Fargo Bank N.A.*, 2011 WL 652844, at *4 (E.D. Tenn. Feb. 14, 2011).

[33] *See*, *Moore*, 2011 WL 652844, at *4.

discrimination under the ECOA, the cause of action accrues when the loan application is initially denied.[34]

That said, courts have recognized that the continuing violation doctrine may toll the statute of limitations in an ECOA case.[35] Under that doctrine, which the Supreme Court has developed for hostile work environment cases arising under Title VII,[36] a plaintiff who can show "not only a longstanding, overarching policy of discrimination but also a specific, allegedly discriminatory act against her within the relevant limitations period" may be entitled to toll the limitations period.[37] But, it must be noted that the Sixth Circuit, which has not directly addressed the continuing violation doctrine in the context of the ECOA, has said that, "courts have been extremely reluctant to apply [the continuing violation] doctrine outside of the context of Title VII."[38]

Moreover, although the Supreme Court has held that equitable tolling is "not inapplicable in discrimination cases" like those filed under the ECOA, such a remedy is to

---

[34] *Haynie v. Veneman*, 272 F. Supp. 2d 10 (D.D.C. 2003).

[35] *Claybrooks v. Primus Auto. Fin. Servs.*, 363 F. Supp. 2d 969, 980-81 (M.D. Tenn. 2005).

[36] *See*, *AMTRAK v. Morgan*, 536 U.S. 101 (2002).

[37] *Claybrooks*, 363 F. Supp. 2d at 983 (citations omitted).

[38] *Bygrave v. Van Reken*, 238 F.3d 419, 2000 WL 1769587, at *2 n.2 (6th Cir. 2000) (quoting *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995)); *see also*, *Ohio Midland Inc. v. Proctor*, 2006 WL 3827510, at *9 (S.D. Ohio Dec. 28, 2006).

be employed "sparingly."[39] To survive a motion to dismiss, an ECOA plaintiff must allege "the minimum information necessary" to invoke equitable tolling.[40]

The Supreme Court has held that equitable tolling is available when a plaintiff can show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.[41]

c.    *The ECOA failure of notice claims (counts one and two) should be dismissed as untimely filed.*

Haug alleges in the complaint that he made his application for credit on December 22, 2005.[42] He further asserts that although he still has not been directly informed as to PNC's response to that application,[43] correspondence from PNC to Haug in March and April of 2010 "make reference to the denial of plaintiff's loan request, for the first time ever."[44] He contends at count one that this failure to provide an answer within 30 days of his application

---

[39] *Hafiz v. Greenpoint Mortgage Funding*, 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009) (citing and quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

[40] *Hafiz*, 652 F. Supp. 2d at 1045.

[41] *Lawrence v. Florida*, 549 U.S. 327, 335 (2007) (citation omitted); accord, *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir. 2011).

[42] ECF # 1 at ¶¶ 51-53. PNC denies it received a completed application on that date. ECF # 5 at 6. For purposes of adjudicating the present motion, however, the fact alleged by Haug is presumed true.

[43] *See, id.* at ¶ 108.

[44] *Id.* at ¶ 109.

-10-

violated the ECOA.[45] He maintains at count two that the failure to receive a definitive response to this day also violates the 30-day notice provision of the ECOA.[46]

The ECOA itself requires that "within 30 days ... after the receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."[47] Thus, taking Haug's allegation as true that a credit application was made on December 22, 2005, ECOA required PNC to give notice of its action on that application by no later than January 21, 2006.

As noted, a cause of action for failure to provide the notice required by the ECOA accrues at the time the violation occurs. Since the date notice was required for an application submitted on December 22, 2005, was January 21, 2006, and the present action was not filed until February 29, 2012 – or more than four years after the expiration of the two-year limitations period in effect at that time, both counts one and two are time-barred, absent equitable tolling or other relief from operation of the limitations period.

In that regard, Haug's complaint makes clear that he was well-aware at the time PNC made no timely response to his 2005 loan application of the notice requirement of the ECOA and was not impaired from raising that issue.[48] Moreover, the complaint itself also makes

---

[45] *Id*. at ¶ 101.

[46] *Id*. at ¶ 111.

[47] 15 U.S.C. § 1691(d)(1).

[48] *See*, *id.* at ¶ 83. This paragraph, with 23 subsections extending over 10 pages of the complaint, details actions taken by Haug from early 2006 through February of 2010 to obtain a response to his 2005 application. At ¶ 83(L) there is a factual allegation that in January,

clear that Haug consciously, if erroneously, chose to raise that issue in private, non-judicial forums within the bank rather than to initiate action under ECOA in the courts while such action was still timely.

As the United States Court of Federal Claims recently noted under similar circumstance, missing the filing deadline because of a plaintiff's own mistaken decision to unnecessarily pursue administrative exhaustion of remedies while the limitations period expires "does not approach the requisite standard for applying equitable tolling."[49] Thus, I recommend concluding that there is no basis for equitable tolling of the two ECOA notice claims under either the Sixth Circuit's test or that of the Supreme Court. Accordingly, PNC's motion to dismiss as to counts one and two should be granted for the reasons stated above.

d.    *The discrimination charges of counts three, four and five should also be dismissed as failing to state a claim upon which relief may be granted under ECOA.*

In count three, Haug states that he was discriminated against in the handling of his 2005 loan application because, "Robert Wilson failed to evaluate the credit request fairly and in an unbiased fashion."[50] Wilson, who is identified as "site supervisor of the Columbus [Ohio] Underwriting Center" of PNC,[51] allegedly "disliked [Haug] because in 2001 and 2002 [Haug] was asked to and did provide [bank management] with specific information that made

---

2009 Haug raised the "identical" issues of providing a timely decision on a loan application raised by this suit with PNC's legal department.

[49] *Lange v. United States*, 79 Fed. Cl. 628, 632 (Fed. Cl. 2007).

[50] *Id*. at ¶ 119.

[51] *Id*. at ¶ 120.

Robert Wilson and his underwriters look poorly (sic)."[52] Haug further alleges that beyond Wilson personally, PNC did not fairly evaluate his application because of its "dislike" for him based on the history of his 2001-2002 reports.[53]

At count four, Haug contends that the discrimination described in count three manifested itself by PNC "failing to follow their own proper and normal procedures."[54] Rather than following "normal handling" procedures, Haug contends that PNC "used a process called a REG B rush process," whereby the review process was done "in a rush fashion."[55] It is this hurried or rush approach, and PNC's failure to handle Haug's requests that his application be handled "in a manner consistent with how any other application and any other applicant would have been handled," that Haug alleges gives rise to a violation of the ECOA.[56]

In count five, Haug asserts that PNC impermissibly "discouraged" him from applying for the loan, in violation of 12 C.F.R. § 202.4(b) – an implementing regulation for the ECOA – which states that a creditor shall not make any written or oral statements to an applicant or prospective applicant that "would discourage on a prohibited basis a reasonable person from making or pursuing an application." Haug contends that the impermissible discouragement

---

[52] *Id*.

[53] *Id*. at ¶ 124.

[54] *Id.* at ¶ 132.

[55] *Id.*

[56] *Id.* at ¶¶ 133-138.

here was that his application was not put into the bank's credit review system at the time it was filed in 2005.[57]

i.    Timelines

Although Haug does not specify exactly when the decision was made to handle his application as he describes, he asserts that this is a continuing violation because PNC has continued to deny it erred in how it processed the application and has repeatedly deceived Haug as to the facts of its review process during his multi-year efforts to obtain a remedy.[58] Nonetheless, it appears, as noted above, that this is not a continuing violation but rather a single claim that accrued in late 2005 to early 2006. As further noted, such a claim would be subject to the two-year limitations statute, and so would now be untimely.

Indeed, Haug specifically notes that the retaliation by Robert Wilson (count three), the failure to follow internal bank procedure (count four), and the discouragement claim rooted in the failure to input his application properly into the bank review system (count five), are all grounded in actions taken in late 2005 and early 2006, and so outside of the applicable two-year limitations period. As previously noted, his attempt to argue that later actions created a continuing violation are not consistent with how that doctrine is applied to ECOA cases. Further, it seems clear, if anything, that these later actions sound in state law

---

[57] ECF # 1 at ¶¶ 141, 142.

[58] *Id.* at ¶ 135.

terms of fraud or negligence,[59] and not as violations – continuing or otherwise – of the ECOA.

Therefore, as stated, the ECOA claim here accrued in late 2005 or early 2006 and so is now untimely.

ii.    Basis of discrimination – failure to follow bank policy

That said, however, even if Haug's claim of a continuing violation was creditable, the underlying basis for the discrimination claim – a failure of PNC to follow its own lending review process – does not state a claim for relief under the ECOA. In particular, the statute specifies three types of activities that constitute unlawful discrimination under the ECOA:

(1)    on the basis race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);

(2)    because all or part of the applicant's income derives from any public assistance program; or

(3)    because the applicant has in good faith exercised any right under this chapter.[60]

These elements give rise to the requirement, stated above, that a plaintiff seeking to make a *prima facie* case of discrimination under the ECOA must first assert that he is a member of a protected class as defined in the statute.[61]

---

[59] Indeed, Haug does cast those claims in such terms in later counts.

[60] 15 U.S.C. § 1691(a)(1)-(3).

[61] *See*, *Mays*, 277 F.3d at 879.

-15-

As the district court observed in *High v. McLean Financial Corp.*,[62] the ECOA "does not create an all encompassing scheme to regulate all relations between lenders and their potential customers."[63] Instead, as the *High* court emphasized, the ECOA is an effort to prevent discrimination in lending in specific, enumerated areas.[64] Thus, the federal ECOA cannot be understood as preempting state law actions for other, non-specified allegations of discrimination in the lending process arising under theories such as fraud or negligence.[65]

iii.     Basis of discrimination – exercise of statutory rights

Likewise, even if the basis for Haug's discrimination claim is 15 U.S.C. § 1691(a)(3), which prohibits discrimination because an applicant "exercised any right under this chapter," and even if such a claim is in the form of a continuing violation of the ECOA, Haug's complaint does not state a ground upon which relief may granted under the ECOA.

First, as the Sixth Circuit stated in *Lewis v. ACB Business Services*,[66] § 1691(a)(3) was designed to bar retaliatory discrimination against persons exercising rights afforded by the Consumer Protection Act but included the "good faith" language to exclude applicants who

---

[62] *High v. McLean Fin. Corp.*, 659 F. Supp. 1561 (D.D.C. 1987).

[63] *Id.* at 1569.

[64] *Id.*

[65] *Id.*; *see also*, *Steigerwald v. Bradley*, 136 F. Supp. 2d 460 (D.Md. 2001) (ECOA inapplicable to claims of negligence and fraud).

[66] *Lewis v. ACB Business Servs.*, 135 F.3d 389 (6th Cir. 1998).

-16-

engage in "frivolous or nuisance disputes" with the lender.[67] Thus, it is necessary, as the court acknowledged in *Hanlin v. Ohio Builders and Remodelers*,[68] that, to state a prima facie case of retaliation under § 1691(a)(3), the plaintiff must first show that he engaged in a protected activity.[69]

In that regard, merely showing that the lender had applied an incorrect criteria to the evaluation of the plaintiff's loan request, without any allegation that such an error had been based on an impermissible factor, is not sufficient to state a claim for relief under the ECOA.[70] In particular, although "departures from normal [banking] procedures may be suggestive of discrimination,"[71] "the mere fact that [a bank] failed to follow its own internal procedures does not necessarily suggest that [the bank] was motivated by illegal discriminatory intent."[72]

Here, Haug bases his retaliation claim on the assertion that the bank took negative action alleged because Haug originally produced an internal bank report outlining

---

[67] *Id*. at 406.

[68] *Hanlin v. Ohio Builders & Remodelers*, 196 F. Supp. 2d 572 (S.D. Ohio 2001).

[69] *Id.* at 580 (citation omitted).

[70] *Williams v. Vilsack*, 620 F. Supp. 2d 40, 49 (D.D.C. 2009).

[71] *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985).

[72] *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995); *see also*, *Cooley v. Sterling Bank*, 280 F. Supp. 2d 1331, 1344 (M.D. Ala. 2003) (failure of a bank to follow internal policy does not provide a basis from which a reasonable jury could conclude that the bank's action was motivated by discriminatory intent).

irregularities in the bank's Columbus loan center. But, Haug has not shown how such an internal work document, created at the express direction of his employer,[73] constitutes his exercise of any right created by the ECOA that would provide the basis for a claim of retaliation under § 1691(a)(3).[74] At most, Haug is left with an allegation that the bank failed to follow its own credit review procedures in his case – an allegation, as shown, which is insufficient to state a claim for relief under the ECOA.

Accordingly, to the extent that Haug's discrimination claim is founded on the bank allegedly not following its own policy in evaluating Haug's application, the claim does not state a basis for relief under the ECOA.

Thus, for the reasons stated above, I recommend finding that all of Haug's discrimination claims in counts three, four, and five are subject to dismissal as either time-barred or for failure to state a claim upon which relief may be granted.

## 2. *The FIRREA count (count six)*

### a. *The statute*

As noted by the district court in *Bethea v. Merchants Commerce Bank*:[75]

---

[73] ECF # 1 at ¶¶ 62 ("plaintiff was asked by bank management to provide [information on] specific inconsistencies and risk concerns that existed between the different consumer underwriting sites"), 64 ("plaintiff provided the information at the request of consumer credit management in Cleveland").

[74] *See also*, *Sallion v. SunTrust Bank Atlanta*, 87 F. Supp. 2d 1323, 1332 (N.D. Ga. 2000) (borrower's criticism of loan originator did not support claim of discrimination).

[75] *Bethea v. Merchants Commerce Bank*, 2011 WL 4861873 (V.I. Oct. 13, 2011).

The Financial Institutes Reform, Recovery, and Enforcement Act of 1989 provides that:

No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) provided information to any Federal banking agency or to the Attorney General regarding (A) a possible violation of any law or regulation; or (B) gross mismanagement , a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; by the depository institution or any director, officer or employee of the institution.[76]

Courts have concluded that to state a *prima facie* case of retaliation under FIRREA whistle-blower protection section, a plaintiff must show (a) that he made a protected disclosure, (b) that an adverse personnel action was taken against him, and (c) that his protected disclosure was a "contributing factor" in the adverse personnel action.[77] Moreover, as the district court in *Cosgrove v. Federal Home Loan Bank of New York* observed, "[a]n action under Section 1831j must be brought within two years of the date of the alleged discrimination or discharge."[78]

b.  *Haug's claim fails to state a claim upon which relief may be granted.*

Here, Haug asserts, contrary to the whistle-blower protection afforded by the above-cited statute, that:

---

[76] *Id.*, at *13 (quoting 12 U.S.C. § 1831j(a)).

[77] *Mann v. Fifth Third Bank*, 2011 WL 1575537, at **2-3 (S.D. Ohio April 25, 2011) (citations omitted).

[78] *Cosgrove v. Federal Home Loan Bank of New York*, 1999 WL 163218, at *7 (S.D.N.Y. March 23, 1999).

-19-

(a)     in 2002 he made a protected disclosure to PNC by compiling a report, at his managers' direction, of "misconduct" and "unethical, illegal and discriminatory actions" attributable to the bank's underwriters in Columbus;[79] and

(b)     "[i]n direct retaliation for [this 2002 action of] bringing to light unlawful activity and [in 2006] requesting a remedy [for the denial of his 2005 loan request];[80]

(c)     he was denied "his right as an employee to fair and unbiased treatment and privileges of a fair investigation and a remedy."[81]

As such, Haug contends that there were two separate actions – his 2002 report of misconduct and his 2006 request for an investigation into his loan denial – that gave rise to retaliation, which consists of PNC's denying him a fair investigation of his claims and a remedy for the loan denial.

The statute specifically limits relief to employees who are retaliated against for providing information to "any Federal banking agency or to the Attorney General."[82] In that regard, 12 U.S.C. § 1831j(e) specifies that for purposes of the statute, "the term 'Federal banking agency' means the [Federal Deposit Insurance] Corporation, the Board of Governors of the Federal Reserve System, the Federal Housing Finance Agency and the Comptroller of the Currency."

---

[79] ECF # 1 at ¶¶ 62-69.

[80] *Id.* at ¶ 150.

[81] *Id.*

[82] 12 U.S.C. § 1831j(a).

-20-

By terms of the statute, therefore, Haug's internal report in 2002 to his own bank supervisors concerning alleged improprieties in the Columbus office does not constitute the provision of information to "any Federal banking agency" as that term is defined in the statute and so cannot form the basis for any retaliation claim under the statute. Moreover, Haug's August 10, 2010, communication with the Office of the Comptroller of the Currency[83] took place subsequent to the allegedly discriminatory and retaliatory acts of PNC and in fact after Haug had left his employment at PNC; thus, that communication also cannot be the basis for any retaliation by PNC that could potentially be actionable under the whistle-blower protection of § 1831j.[84]

Count six of the complaint should be dismissed as failing to state a claim upon which relief may be granted under 12 U.S.C. § 1831j.

### 3. State law claims (counts seven, eight, nine, ten and eleven)

#### a. Applicable law

28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over claims arising under state law if it has dismissed all claims over which it had original jurisdiction. As the Sixth Circuit teaches, although a district court has broad discretion as to whether to exercise supplemental jurisdiction over state law claims,

---

[83] ECF # 1 at ¶ 83, subsection W.

[84] See, id. at ¶¶ 76-77. "[A]fter exhausting all proper internal inquiry measures [at PNC] ..., the plaintiff left the bank and pursued the matter through the Office of the Comptroller of the Currency."

"[t]hat discretion, however, is bounded by constitutional and prudential limits on the use of federal judicial power.[85] Thus, "[a]s a rule of thumb, ... [w]hen all federal claims are dismissed prior to trial, the balance of considerations usually will point to dismissing the state law claims or remanding them to state court if the action was removed."[86]

b.    *All remaining state law claims should be dismissed.*

Here, I have recommended dismissing all of Haug's claims (counts one through six) arising under federal law. The remaining claims (counts seven through eleven) as pled arise under either Ohio statute (count seven) or as violations of Ohio's law on intentional misrepresentation (count seven), fraudulent concealment (counts eight and nine), negligent misrepresentation (count ten) and negligence (count eleven). Since this case has not proceeded beyond this initial Rule 12(b)(6) motion to dismiss, I recommend, consistent with the Sixth Circuit's analysis cited above, that counts seven through eleven inclusive be dismissed without prejudice on the grounds that this Court declines to exercise its supplemental jurisdiction over these claims in light of the recommended dismissal of the claims asserted under federal law.

---

[85] *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996).

[86] *Id.* at 1254-55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

## Conclusion

For the foregoing reasons, I recommend that the motion to dismiss for failure to state a claim upon which relief can be granted be granted in full as to the claims grounded in federal law and that the claims based in state law be dismissed without prejudice.

Dated:  February 6, 2013                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[87]

---

[87] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).